United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BETSALEL WILLIAMSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff(s),<br>v.<br>APPLE, INC.,<br><br>Defendant(s). | CASE NO. 5:11-cv-00377 EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>[Docket Item No(s). 25] |

Defendant Apple, Inc. ("Apple") presently moves for an order dismissing the First Amended Class Action Complaint ("FAC") filed by Plaintiff Betsalel Williamson ("Plaintiff"). See Docket Item No. 25. Apple's motion will be granted for the reasons stated below.

## I. FACTUAL BACKGROUND

### A. The Product

Among other products, Apple designs, manufactures and markets smartphones. See FAC, Docket Item No. 18, at ¶¶ 5, 6. On June 7, 2010, Apple introduced a new product in its iPhone smartphone line, the iPhone 4, at the World Wide Developers Conference ("WWDC") in San Francisco. See id., at ¶¶ 7, 8. The iPhone 4 is 3.5 inches long, weighs 4.8 ounces, and is encased in aluminosilicate glass. See id., at ¶ 8. The glass feature of the iPhone 4 differed from its predecessor versions, which had back panels made of aluminum and plastic. See id., at ¶ 7.

Apple made available on its website a video of the iPhone 4's introduction. See id., at ¶ 8.

1    The FAC alleges that during this introduction, Steve Jobs ("Jobs"), the former CEO of Apple, made
2    a number of statements describing the iPhone 4:

3    •    Jobs says it is "beyond a doubt this is one of the most beautiful and precise things
4         we've ever made."

5    •    Jobs goes on to state that the "precision of which this is made is beyond any
6         consumer product we've ever seen."

7    •    Jobs "called attention" to the glass paneling on the iPhone 4, stating that Apple
8         utilized glass on the "front and back for optical quality and scratch resistance."

9    The FAC also alleges that Jonathan Ive, Apple's Senior Vice President of Industrial Design,
10   referred to the iPhone 4's glass housing as "comparable in strength to sapphire crystal" and 30 times
11   harder than plastic at the WWDC. See id., at ¶ 9. A video demonstration of the glass' strength,
12   where a portion of the glass used on the iPhone 4 was bent to show that it can withstand bending of
13   up to 30 degrees without cracking or breaking, was also included on Apple's website and widely
14   reported by the media. See id.

15   According to the FAC, Apple has used the strength of the iPhone 4's glass housing as a
16   marketing point. See id., at ¶ 10. Apple has described the glass as "the same type of glass used in
17   the windshields of helicopters and high-speed trains." See id. Apple also markets the glass as "20
18   times stiffer and 30 times harder than plastic . . . ultradurable and more scratch resistant than ever."
19   See id. Apple produced commercials available on national television and its own website showing
20   the iPhone 4 being used without a protective cover. See id., at ¶ 11.

21   **2.    The Alleged Defect**

22   The FAC alleges that within the first week of its release for sale, consumers and technology
23   critics began to comment that the iPhone 4's glass housing was quickly scarred and broken by
24   normal, foreseeable use despite Apple's representations that the glass was ultradurable. See id., at
25   ¶¶ 14-17. A third-party phone insurer released a study finding that the glass housing on the iPhone 4
26   breaks at rate 82% higher than those reported for a prior version of the iPhone. See id., at ¶ 26.
27   Broken or shattered glass renders the iPhone 4 useless. See id., at ¶ 19.

28   Consumers who purchased the iPhone 4 were charged $199 to replace the product if the glass

United States District Court
For the Northern District of California

housing was broken or $29 to replace a cracked glass panel. See id., at ¶ 33. Plaintiff contends these charges are a breach of the warranty Apple issues with the iPhone 4. See id., at ¶ 40.

### 3. The Plaintiff in this Case

Plaintiff purchased an iPhone 4 on October 26, 2010, for $319.93, after viewing various marketing materials describing the strength and durability of the device, including those attributed to Jobs as described above. See id., at ¶ 4. These marketing materials influenced Plaintiff's decision to purchase the iPhone 4. See id.

Approximately two days after purchasing his iPhone 4, Plaintiff's device fell from the arm of a chair which resulted in spider cracks across the back glass panel. See id. Plaintiff was required to pay $29 for a replacement panel. See id.

Plaintiff alleges he would not have purchased the iPhone 4 if he knew that the glass housing on the phone was more susceptible to cracking during normal and foreseeable usage than earlier iPhone versions. See id. He now seeks to represent a class of consumers who purchased an iPhone 4 in the United States.

## II. LEGAL STANDARD

The legal standard governing Apple's motion is well-established and involves three common rules of procedure. The first is Federal Rule of Civil Procedure 8(a), which requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Com. v. Twombly, 550 U.S. 544, (2007) (internal quotations omitted). Rule 8 works in tandem with the next applicable rule, Federal Rule of Civil Procedure 12(b)(6). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). The factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

The third relevant rule requires more detailed allegations for causes of action based in fraud.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Proc. 9(b). These allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). In other words, claims of fraudulent conduct must generally contain more specific facts than is necessary to support other causes of action.

Mechanically speaking, the court generally "may not consider any material beyond the pleadings" when deciding whether to grant a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). The court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). There are notable exceptions to these guidelines, however. The court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001).[1] In addition, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

### III. DISCUSSION

The FAC contains seven causes of action: (1) breach of express warranty in violation of California Commercial Code § 2313; (2) breach of implied warranty in violation of California Commercial Code § 2314; (3) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et. seq.*; (4) violation of the Consumers Legal Remedies Act ("CLRA"), California Business and Professions Code § 1750 *et. seq.*; (5) violation of California's False Advertising Law ("FAL"), California Business and Professions Code § 17500; (5) violation of California's Unfair Competition

---

[1] Plaintiff's Request for Judicial Notice (Docket Item No. 27) is DENIED as the court finds the information contained therein irrelevant to this determination.

Law ("UCL"), California Business and Professions Code § 17200, and (6) common law unjust enrichment. The court addresses each of cause of action in turn, beginning with the CLRA.

### A.     CLRA

The CLRA makes unlawful "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a); In re Actimmune Marketing Litig., 2009 U.S. Dist. LEXIS 103408, at *47, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009). In particular, the CLRA prohibits a person from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another," or "[a]dvertising goods or services with intent not to sell them as advertised." Cal. Civ. Code §§ 1770(a)(5), (a)(7), (a)(9). "The CLRA is interpreted liberally 'to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.'" Buckland v. Threshold Enters., Ltd., 155 Cal. App. 4th 798, 809 (2007), overruled on other grounds by Kwikset Corp. v. Super. Ct., 51 Cal. 4th 310 (2011) (quoting Cal. Civ. Code § 1760).

Conduct that is "likely to mislead a reasonable consumer" violates the CLRA. Keegan v. Am. Honda Motor Co., Inc., 2012 U.S. Dist. LEXIS 3007, at *938, 2012 WL 75443 (C.D. Cal. Jan. 6, 2012) (quoting Colgan v. Leatherman Tool Group, Inc., 135 Cal. App. 4th 663, 680 (2006)). "A 'reasonable consumer' is 'the ordinary consumer acting reasonably under the circumstances,' who 'is not versed in the art of inspecting and judging a product, [or] in the process of its preparation or manufacture. . . .'" Id. (quoting Colgan, 135 Cal. App. 4th at 680). "The CLRA proscribes both active misrepresentations about the standard, quality, or grade of goods, as well as active concealment related to the characteristics or quality of goods that are contrary to what has been represented about the goods." Morgan v. Harmonix Music Sys., No. C08-5211 BZ, 2009 U.S. Dist. LEXIS 57528, at *9, 2009 WL 2031765 (N.D. Cal. July 7, 2009).

"Any consumer who suffers any damage as a result of the use or employment by any person of" the unlawful activity may bring an action under this section. Cal. Civ. Code, § 1780(a). But like its common law counterpart, a plaintiff asserting a CLRA claim which sounds in fraud must

5
CASE NO. 5:11-cv-00377 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1  establish reliance and causation. <u>Buckland</u>, 155 Cal. App. 4th at 809.

2  The essence of Plaintiff's allegations under the CLRA center on the statements of Apple
3  employees as well as the marketing materials used to advertise the iPhone 4. Plaintiff contends that
4  through these statements and materials, Apple knowingly misrepresented the characteristics of the
5  phone's glass housing and failed to disclose any defects in the glass. In response, Apple argues that
6  (1) Plaintiff failed to allege that the damages to his phone was caused by Apple; (2) Plaintiff failed
7  to allege an actionable misrepresentation; and (3) Plaintiff failed to identify and allege an actionable
8  omission.

### 1. Causation

10  Without doubt, the CLRA cause of action asserted by Plaintiff here is one which sounds in
11  fraud, and the parties do not appear to disagree on this characterization. To succeed, Plaintiff must
12  therefore allege that Apple's misrepresentations and omissions caused him damage and must meet
13  the heightened pleading standard required by Federal Rule of Civil Procedure 9. Apple argues
14  Plaintiff failed to do this in the FAC because the FAC does not attribute the damage to Plaintiff's
15  phone to Apple. Instead, Apple contends that any damage to Plaintiff's phone was caused by
16  Plaintiff's own carelessness when the phone dropped from the arm of a chair.

17  In making this argument, Apple mischaracterizes Plaintiff's theory of liability. The FAC
18  does not allege or even suggest that Apple caused the phone to fall from the chair because such an
19  assertion would be absurd. That type of claim would require a fanciful concoction of allegations,
20  perhaps detailing a scheme by Apple employees to surreptitiously enter Plaintiff's home in order to
21  push Plaintiff's new iPhone 4 from its resting place atop a piece of furniture while Plaintiff was not
22  looking.

23  The theory presented here is not so unbelievable. Plaintiff, like many other CLRA plaintiffs,
24  contends that misrepresentations and omissions concerning the quality of the product caused him to
25  purchase something he would not have purchased had he been presented different information. <u>See,</u>
26  <u>e.g.</u>, <u>Henderson v. Gruma Corp.</u>, No. CV 10-04173 AHM (AJWx), 2011 U.S. Dist. LEXIS 41077,
27  2011 WL 1362188 (C.D. Cal. Apr. 11, 2011). In this case the product is Plaintiff's iPhone 4, and it
28  took the fall from the chair for Plaintiff to realize that he may have been misled about the quality of

1  its glass housing. Thus, the damage at issue is the economic loss from Plaintiff's purchase that he
2  may not have otherwise made, not the actual physical damage to Plaintiff's phone that resulted from
3  its impact with the floor.

4  As far as causation goes, Plaintiff alleges that the marketing materials he reviewed
5  influenced his decision to purchase the iPhone 4, and that he would have acted differently under
6  other circumstances. The court therefore rejects Apple's causation argument, which focuses too
7  narrowly on the fall from the chair.

### 2. Actionable Misrepresentation

In a second attack on the CLRA claim, Apple argues that the misrepresentations identified in the FAC are either statements of fact not alleged to be false or non-actionable puffery. The court begins this portion of the discussion by addressing each of the cited statements separately. Apple is correct that the statements attributed to Jobs are not actionable under the CLRA. The descriptors used by Jobs - that the iPhone 4 is "beautiful," and "precise" - constitute puffery. "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." Oestreicher v. Alienware Corp., 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (internal quotation marks and citations omitted), aff'd by 322 Fed. Appx. 489 (9th Cir. 2009). Vague or highly subjective claims about product superiority also amount to non-actionable puffery; it is only "misdescriptions of specific or absolute characteristics of a product [that] are actionable." Id. (quoting Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997)).

Jobs' explanation that glass was used "front and back for optical quality and scratch resistance" is no more than a description of the phone. It is not a specific commentary about the iPhone 4's durability, let alone one that is likely to mislead a "reasonable consumer."[2]

---

[2] Plaintiff attempts to escape a determination that these statements are puffery by arguing that "factual assertions are not puffery." That much is true, but it does not assist Plaintiff here because it is also true that vague assertions are not actionable under the CLRA even if they are purported assertions of fact. See, e.g., Shroyer v. New Cingular Wireless Servs., 622 F.3d 1035, 1043 (9th Cir. 2010) ("'[A]ll the advantages that only the nation's largest wireless company can provide' is a vague statement and provides nothing concrete upon which [plaintiff] could reasonably rely.")

Moreover, the "classic example of an actionable representation of fact" cited by Plaintiff is

7
CASE NO. 5:11-cv-00377 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1    Nor does the Ive statement support the CLRA cause of action. Much like the statements
2 from Jobs, Ive's comparison of the glass to sapphire crystal and the claim that it is "30 times harder
3 than plastic" are not alleged in the FAC to be misdescriptions of the glass used on the iPhone 4,
4 assuming these statements are specific enough so as to escape classification as puffery. The same
5 goes for the video demonstration of the glass' strength. In any event, Plaintiff does not allege that
6 he specifically relied on the Ive statements or video demonstration in a manner which meets the
7 standard required by Federal Rule of Civil Procedure 9(b). Donohue v. Apple, Inc., No. 11-cv-
8 05337 RMW, 2012 U.S. Dist. LEXIS 65860, at *24, 2012 WL 1657119 (N.D. Cal. May 10, 2012)
9 (citing Baltazar v. Apple, Inc., Case No. CV-10-3231-JF, U.S. Dist. LEXIS 13187, at * 10-11, 2011
10 WL 588209 (N.D. Cal. Feb. 10, 2011)).

11   The court also rejects Plaintiff's contention that commercials demonstrating use of the
12 iPhone 4 without a cover equate to some affirmative commentary on the phone's durability for two
13 primary reasons. First, the allegations describing the commercial depiction are not plead with the
14 specificity mandated by Rule 9(b). See id.

15   Second, without more than what is contained in the FAC, the type of representation
16 described is not actionable under the CLRA. A "reasonable consumer" viewing a commercial
17 showing the iPhone 4 in use as a phone, but without a cover, would not be misled to believe that the
18 iPhone 4 could withstand any particular level of impact if the phone was dropped. This is because
19 the commercial has nothing to do with durability. The FAC does not allege, for example, that any of
20 the television commercials showed a coverless iPhone 4 being dropped on the ground only to
21 emerge unscathed. That type of representation could mislead the reasonable consumer in the way
22 Plaintiff alleges; the commercial alluded to in the FAC would not. Plaintiff, therefore, reads too
23 much into this piece of marketing material.

---

inapposite to this case. While there does appear some facial similarly between an auto dealer's assertion that a windshield is made of shatterproof glass and this action since both do involve glass and the breaking of glass, the similarities end there. In the case underlying the "classic example," the auto dealer made a specific *written representation* that the glass windshield would not would not fly or shatter under the hardest impact. Baxter v. Ford Motor Co., 168 Wash. 456, 459-60 (1932). In contrast, Apple is not alleged to have made any similar statement concerning the glass housing on the iPhone 4.

8
CASE NO. 5:11-cv-00377 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Relying on Morgan v. AT&T Wireless Services, Inc., 177 Cal. App. 4th 1235 (2009), Plaintiff argues that he is relying on the allegedly misleading nature of Apple's marketing as a whole, rather than on any particular representation made by Apple. But the court is not convinced that the marketing described in the FAC can be interpreted in the same manner as that described in Morgan. In Morgan, plaintiffs cited to a combination of "AT&T's statements that it was committed to providing for all of its customers' wireless needs 'today and tomorrow'", "the fact that it held itself out as the world's leading provider of wireless communications services," and the "sale of expensive . . . phones that required service contracts for one, two, or more years" as material that would lead the average consumer to believe that AT&T would maintain a network compatible with the phone they purchased. Morgan, 177 Cal. App. 4th at 1245-46. The Morgan court noted that the plaintiffs' premise was possible under those circumstances. Id. at 1243, 1256.

Here, the representations taken as a whole would not lead the "reasonable consumer" to believe that the glass housing on the iPhone 4 was indestructible or drop-proof because of one important distinction not at issue in Morgan: it is a well-known fact of life that glass can break under impact, even glass that has been reinforced. This much is known to the ordinary, reasonable consumer. The shattered window of a storefront, the cracked windshield of a car, and the chipped smartphone screen are routine encounters of modern existence. It seems a suspension of logic to say that the marketing campaign described in the FAC, which notably has nothing to do with phone-dropping, somehow erases these images from the collective experience such that the reasonable consumer could expect that glass could not break if dropped.

### 3. Actionable Omission

Omissions are actionable under the CLRA only when the omission is contrary to a representation actually made by the defendant or where a duty to disclose exists. Keegan, 2012 U.S. Dist. LEXIS 3007, at *938. Under California law, a duty to disclose arises in four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from plaintiff; or (4) when the defendant makes partial representations but also suppresses some material facts." Id. (quoting Smith v. Ford Motor Co., 749 F. Supp. 2d 980,

987 (N.D. Cal. 2010)).

Here, Plaintiff asserts the following omissions in the FAC: (1) "Apple failed to disclose and concealed from Plaintiff and Class members that normal use of the iPhone 4, including use as advertised, would result in cracked glass housing such that the device would not longer be functional," and (2) "[n]ormal wear and tear can easily render the device inoperable and a safety risk to the consumer. This information was not disclosed to the consumer." See FAC, at ¶¶ 22, 23. The problem with these allegations is that they do not constitute actionable omissions when construed with the representations actually attributed to Apple. No where in the FAC is Apple alleged to have stated that the iPhone 4 was resistant to normal wear and tear, that the glass housing would never break or crack under normal use, or that the phone might not be damaged if it was dropped. As already pointed out, phone-dropping is not alleged to have been depicted anywhere in the marketing material. The alleged omissions, then, are not contrary to any of Apple's actual representations.

Moreover, Plaintiff has not sufficiently plead facts supporting a duty to disclose on the part of Apple because Plaintiff does not allege what was actually known to Apple in anything less than a conclusory fashion. Alleged reports by unidentified consumers which neither reveals the timing of the reporting, who the reporting was made to, nor the specific content of the reporting is not consistent with Plaintiff's obligation to plead specific facts under Rule 9. See FAC, at ¶ 17. Similarly, the allegation that, "[a]ccording to sources inside and outside Apple," the company began working to correct the defect in the glass also fails under Rule 9. See FAC, at ¶ 29. The studies and internet articles which apparently discuss defects in the iPhone 4's glass housing fare no better because they do not create a duty disclose without an allegation explaining how or why Apple was aware of these items. See Kent v. Hewlett-Packard Co., No. 09-5341 JF (PVT), 2010 U.S. Dist. LEXIS 76818, at *23-24, 2010 WL 2681767 (N.D. Cal. July 6, 2010) (citing Oestreicher, 544 F. Supp. 2d at 975 n.9).

As discussed, Plaintiff has not plead either an actionable misrepresentation or omission. The CLRA claim will be dismissed with leave to amend.

**B.     FAL**

The FAL makes it unlawful to make or disseminate any statement concerning property or

10
CASE NO. 5:11-cv-00377 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

services that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500.

For this cause of action, Plaintiff cites to the same marketing material discussed under the CLRA claim. Specific to the FAL, Plaintiff contends the material is misleading and "likely to deceive a reasonable consumer into believing that the iPhone [4] should be able to sustain the kind of short drop that occurs in the ordinary course of careful usage." See FAC, at ¶ 89.

For much the reasons that the allegations do not presently support liability under the CLRA, they similarly do not support liability under the FAL. Accordingly, the FAL claim will be dismissed with leave to amend.

### C. Warranty Claims

#### 1. Breach of Express Warranty

To prevail on a breach of express warranty claim under California Commercial Code § 2313, "a plaintiff must prove (1) the seller's statements constitute an 'affirmation of fact or promise' [which relates to the goods] or a 'description of the goods'; (2) the statement was 'part of the basis of the bargain'; and (3) the warranty was breached." Weinstat v. Dentsply Int'l, Inc., 180 Cal. App. 4th 1213, 1227 (2010) (quoting Keith v. Buchanan, 173 Cal. App. 3d 13, 20 (1985)).

Since liability for breach of express warranty sounds in contract, "[a] manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." Cipollone v. Liggett Group, 505 U.S. 504, 525 (1992). "The key under [§ 2313] is that the seller's statements - whether fact or opinion - must become 'part of the basis of the bargain.'" Hauter v. Zogarts, 14 Cal. 3d 104, 115 (1975) (quoting Cal. Com. Code § 2313(b)).

Here, the language applying the warranty to "the hardware product manufactured by and for Apple" appears to cover the glass encasing the iPhone 4, and Apple does not directly dispute that defects in the glass case may be covered by the warranty under specified circumstances. But that determination notwithstanding, the facts contained in the FAC do not support the ultimate "affirmation of fact or promise" that Plaintiff relies on as a basis for this cause of action. Plaintiff argues in the his opposition that Apple warranted the iPhone 4 to have "damage-resistant glass housing." But the representation of "damage resistance" appears no where in the FAC. To the

11
CASE NO. 5:11-cv-00377 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

contrary, the fact that a warranty covering the glass even exists suggests that Apple never made or reasonably could make such a representation.

Furthermore, for reasons similar to those discussed in relation to the CLRA claim, the marketing material and statements by Apple employees which are cited in the FAC cannot be legitimately used as a representation that the iPhone 4 was completely damage-resistant, especially when the product at issue contains a component that is inherently breakable, like glass. Under the facts alleged, the marketing material could not become "part of the basis for the bargain" for the purposes of warranty liability.

In addition to these shortcomings, this cause of action is also deficiently plead because Plaintiff does not identify the purported defect in the glass housing, other than to simply say that the glass housing is defective because it broke when Plaintiff's iPhone 4 was dropped. But again, glass can break when it is dropped. Under these circumstances, Iqbal and Twombly require something more about the purported defect that what has been presented. This cause of action will therefore be dismissed with leave to amend.

### 2. Breach of Implied Warranty and Magnuson-Moss Warranty Act

The implied warranty of merchantability, which Plaintiff invokes through this cause of action, provides that a product must be "fit for the ordinary purposes for which such goods are used." Cal. Com. Code § 2314; see also Hauter, 14 Cal. 3d at 118-19.

Plaintiff contends that the iPhone 4 is not fit for its ordinary purpose because the glass housing is not ultradurable. That allegation, however, has nothing to do with the iPhone 4's intended use as a smartphone, which the court safely presumes includes functions like making and receiving calls, sending and receiving text messages, or allowing for the use of mobile applications. Notably, the FAC does not state that Plaintiff's iPhone 4 was deficient in any of these or other expected phone functions, and it is certainly a stretch to conclude that one "ordinary purpose" of the iPhone 4, or any smartphone for that matter, is to drop it on the ground. Accepting Plaintiff's theory of liability would mean that the iPhone 4 is not merchantable unless it is completely resistant from accidental breakage or damage. That cannot be.

This cause of action is dismissed with leave to amend. Since both warranty claims fail as

12

plead and since Plaintiff's cause of action under the Maguson-Moss Warranty Act is derivative of those claims, that cause of action is also dismissed with leave to amend.

### D. UCL

Under the UCL, there are three varieties of unfair competition: "acts or practices which are unlawful, or unfair, or fraudulent." Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 618-19 (1993). "Unlawful" practices are "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." Saunders v. Sup. Ct., 27 Cal. App. 4th 832, 838 (1999). "Unfair" practices constitute "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cal-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999). The "fraudulent" prong under the UCL requires a showing of actual or potential deception to some members of the public, or harm to the public interest. See id. at 180; see also McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457 (2006); Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995). The UCL 'borrows' violations of other laws and treats them as unfair business practices, and also "makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." Cal-Tech, 20 Cal. 4th at 180.

Here, Plaintiff bases the cause of action under the UCL on the same allegations as the CLRA cause of action. But the allegations do not support liability under the UCL for the same reasons they do not support liability under the CLRA.

Plaintiff's only allegations under the "unlawful" prong of the UCL relate to violations of the CLRA and the other statutes referenced by Plaintiff. Since the court has determined that each of those purported statutory causes of action fail as presently plead, Plaintiff has also failed to state a claim under this portion of the UCL.

Turning to the "unfair" prong, Plaintiff alleges Apple's practices are unfair because "consumers are led to believe that the iPhone 4 has qualities that it does not" and "are further injured when Apple refuses to replace or repair the defective device." See FAC, at ¶ 96. However, the court has already explained why reasonable consumers could not be misled by the materials

13
CASE NO. 5:11-cv-00377 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

described by Plaintiff, and has also indicated why Plaintiff's claims of defect with the iPhone 4's glass housing are not sufficiently plead. For these same reasons, Plaintiff has not stated a claim under the unfair prong of the UCL.

For the fraudulent prong, Plaintiff again makes the same claim he made under the CLRA based on the same facts: that Apple's "practices are misleading because they are likely to deceive consumers into believing that the iPhone 4 can sustain normal and reasonable use, including the use advertised by Apple, without damaging the front and back panels." See id., at ¶ 95. But the allegations fail to support liability based on fraudulent business practices under the UCL for the same reasons they do not state a claim under the CLRA.

For these reasons, the UCL claim will be dismissed with leave to amend.

### E.     Unjust Enrichment

Apple argues that the cause of action for unjust enrichment must be dismissed because it is not a recognized claim in California. The court agrees. "Courts consistently have held that unjust enrichment is not a proper cause of action under California law." In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig., 754 F. Supp. 2d 1145, 1194 (C.D. Cal. 2010). "Unjust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself." Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793 (2003). "Simply put, 'there is no cause of action in California for unjust enrichment.'" In re Toyota Motor Corp., 754 F. Supp. 2d at 1194 (citing Melchior, 106 Cal. App. 4th at 793). Since Plaintiff's claim for unjust enrichment cannot state a claim for relief, it will be dismissed without leave to amend.

### IV.     ORDER

Based on the foregoing, Apple's Motion to Dismiss (Docket Item No. 25) is GRANTED. The cause of action for unjust enrichment is DISMISSED WITHOUT LEAVE TO AMEND. All other causes of action are DISMISSED WITH LEAVE TO AMEND. Any amended complaint must be filed within 21 days of the date of this order.

The court schedules this case for a Case Management Conference on **November 9, 2012, at 10:00 a.m.** The parties shall file an updated Joint Case Management Statement on or before **November 2, 2012**.

**IT IS SO ORDERED.**

Dated: September 4, 2012


EDWARD J. DAVILA
United States District Judge

CASE NO. 5:11-cv-00377 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS